IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| RANDY SCOTT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 09-0854-CV-W-ODS |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## **ORDER AND OPINION AFFIRMING COMMISSIONER'S FINAL DECISION DENYING BENEFITS**

Pending is Plaintiff's request for review of the final decision of the Commissioner of Social Security denying his applications for disability benefits. The Commissioner's decision is affirmed.

## I. BACKGROUND

Plaintiff was born in March 1971, has a high school education, and has prior work experience as an order filler, materials handler, and tire technician. In May 2007, he was kidnaped and assaulted that occurred during the robbery of his home. After luring Plaintiff out of the house with a false claim of needing a jump start for their car, they assaulted him and put him in the trunk of a car. During the assault, Plaintiff's left Achilles tendon was slashed to keep him from running away. After keeping him in the car's trunk for three days, the assailants dropped him at a hospital.

For purposes of this matter, the most important physical injury suffered by Plaintiff was to his Achilles tendon. He initially received a skin graft, but the injury's severity was not fully recognized. Plaintiff continued to experience pain and difficulty walking and standing. Once the extent of the injury was discovered, Plaintiff's doctor (Dr. John Iaquinto) told him he could have surgery or "liv[e] with it." Plaintiff elected to undergo surgery "given his age and higher functional status." R. at 150. In October

2007, Plaintiff underwent surgery to repair the damage to his tendon. R. at 124-25. Plaintiff returned for a follow-up two weeks at which time Dr. Iaquinto noted Plaintiff "feels great. No pain." R. at 149-50. Plaintiff also reported a lack of pain in December. R. at 148-49. In January, Plaintiff reported numbness and a feeling like he was "walking on bone in the heel part." Plaintiff also reported pail while walking "at level 6 otherwise not too bad." However, Dr. Iaquinto noted Plaintiff was showing "good progress" and that Plaintiff was able to ambulate fully "with only mild limp." He provided Plaintiff with exercises to increase the range of motion and indicated the pain in Plaintiff's heel "will resolve with increased activity." Plaintiff was restricted "from work activities on his feet in production work through" the middle of February 2008 and told to return as needed. R. at 147-48. Plaintiff never returned to Dr. Iaquinto.

Meanwhile, in July 2007, Plaintiff began receiving treatment for post-traumatic stress disorder ("PTSD") at Burrell Behavioral Health, but he canceled or missed many appointments despite repeated attempts by staff to contact him. R. at 136-39. On October 4 he reported experiencing flashbacks and difficulty sleeping but stated that he "felt better." R. at 130-31. He made a similar report the following week. The record for that visit also references a "loss of memory" but provides no details. R. at 128-29. Plaintiff did not return to the clinic.

Plaintiff was incarcerated from May 2008 to December 2008 for nonpayment of overdue child support. On June 11, he underwent what appears to be a mental health evaluation administered by the Department of Corrections ("DOC"). Plaintiff related the events of May 2007 but disavowed the need for any help. R. at 154-55. On August 22, he sought treatment, complaining of short-term memory loss, nightmares, flashbacks, and difficulty sleeping. He was assessed as suffering from PTSD and possible brain injury (to account for the memory loss). An appointment was made with a staff psychiatrist to assess the appropriateness of medication, and a counseling schedule was also established. R. at 156-57. Plaintiff's condition remained largely constant until October. In the meantime, Plaintiff got a different job in the prison that involved less stress and a quieter environment. R. at 159. During this time the problem he described most often (and that he identified as the one of greatest concern) was his difficulty

2

sleeping.  He also reported experiencing nightmares and flashbacks.  R. at 157-63.  On one occasion the therapist wrote that Plaintif's "short-term memory is impaired significantly," but provided no explanation as to whether this conclusion was based on Plaintiff's report or the results of objective testing.  No test results are described.  R. at 161.

Plaintiff began receiving medication on October 3.  R. at 164.  The following week, Plaintiff reported that his medication had enabled him to sleep and his condition had improved as a result.  His concerns shifted to his "cognitive impairment (poor concentration/attention; poor short-term memory and comprehension).  R. at 166.  On October 16 Plaintiff reported continued improvement and that his "me[m]ories are beginning to resurface more."  R. at 167.

In December – after being released from prison – Plaintiff began receiving treatment at Truman Medical Center ("TMC").  At the initial appointment on December 16, 2008, his GAF score was assessed at 44 initially, but was 55 by the end of the appointment.  He identified his problems as "intrusive thoughts, hyper vigilance, and paranoia and sleep disturbances."  No mention was made of memory problems.  R. at 261-62.  To the contrary, Plaintiff indicated his memory was intact.  R. at 259.  On December 29, he "exhibit[ed] arousal symptoms with insomnia, irritability, poor concentration, hypervigilance, and an exaggerated startle response to perceived threats."  Plaintiff also contended he could not work, but ascribed this to pain in his leg, face and kidney – not to any of his mental problems.  R. at 251.

In February 2009 a Treatment Plan was developed.  The areas discussed include "improving his short term memory" and coping with pain in his leg.  R. at 293-94.  While the record contains no reports after that date, a psychiatrist at TMC wrote a letter on March 18, 2009, indicating Plaintiff was still a patient.  The letter states Plaintiff has PTSD and experiences "nightmares, intrusive thoughts, paranoia, inability to sustain concentration, attention span and persistence, social isolation, hyper vigilance and sleep disturbance."  No mention is made about memory problems.  The letter also describes Plaintiff's GAF score as 44 and makes no reference to the later score.  Finally, the letter concludes Plaintiff could not complete a normal workday "without

3

interruptions from psychologically based symptoms" or "perform at a persistent pace without an unreasonable number and length of rest periods." R. at 295.

At the hearing, Plaintiff testified that his leg "throbs and burns all the time" when walking and standing. R. at 305. He also testified that a doctor at Swope Park Health Center told him the nerves were damaged around his tendon and there was nothing that could be done other than provide pain medication, R. at 305, but the records do not confirm this statement. R. at 223-26. Plaintiff testified he can sit so long as his leg is elevated so his heel is off the ground. R. at 307. He estimated he could walk half a mile and stand for one hour at a time. R. at 307. Plaintiff also discussed the job-change in the prison, explaining that he sought another job because his foot was hurting. R. at 311.

Plaintiff also testified that he is afraid to leave his house or to go into certain portions of the house (such as the basement). He hears voices, and had been hearing voices twice a week for the four months prior to the hearing (which was held on February 19, 2009). R. at 308-309.[1] He described memory problems that prevented him from remembering a book he just read or a movie he just watched. R. at 309-10. Depression and worry prevent him from focusing. R. at 310. Plaintiff spends his time watching TV and sitting on the porch. R. at 314.

The ALJ elicited testimony from a vocational expert ("VE"). The ALJ's first hypothetical assumed a person of Plaintiff's age, education and work experience who could lift twenty pounds occasionally and ten pounds frequently, stand and walk for thirty minutes at a time an four hours in a day, could set more than six hours in an eight hour day, could not work outdoors or in the dark, could not climb ladders and could only occasionally climb stairs. The hypothetical also contained moderate limitations in the ability to understand, remember and carry out detailed instructions, maintain attention and concentration for extended periods, and interact appropriately with the public. R. at 327. The VE testified such a person could not perform their past work and had no

---

[1]This is significant because the Treatment Plan developed at TMC just three days prior does not mention Plaintiff was hearing voices.

4

transferable skills, but that such a person could perform the jobs of photocopy machine operator, retail marker, or circuit board assembler. R. at 328.

The ALJ found Plaintiff suffers from the effects of an Achilles tendon laceration and PTSD, both stemming from an assault. However, he discounted Plaintiff's credibility for a variety of reasons, including Plaintiff's sporadic work history and Plaintiff's motivation to avoid working because of his past-due child support obligations. The ALJ also noted numerous inconsistencies in the Record, including (1) the lack of confirming diagnoses, (2) the lack of treatment consistent with Plaintiff's complaints, and (3) contradictions between Plaintiff's statements to doctors and his testimony. He found Plaintiff to be limited in the manner described in the hypothetical question and relied on the VE's testimony to find Plaintiff could perform other work in the national economy. R. at 23-24.

## II. DISCUSSION

Plaintiff first argues the case must be remanded for consideration of new and material evidence; namely, the March 2009 letter from the TMC psychiatrist. Plaintiff relies on provisions regarding evidence developed after the administrative proceedings were concluded. In this case, the letter was not available until after the hearing before the ALJ, but it was submitted before the ALJ's decision and was in the Record when the case was reviewed by the Appeals Council. "Where, as here, the Appeals Council considers new evidence but denies review, we must determine whether the ALJ's decision was supported by substantial evidence on the record as a whole, including the new evidence." Davidson v. Astrue, 501 F.3d 987, 990 (8th Cir. 2007). Thus, the entire Record – including the March 2009 letter – must be considered in determining whether substantial evidence supports the Commissioner's final decision. However, the evidence was considered at the administrative level, so a remand is not required just so the evidence can be considered.

Plaintiff next argues the ALJ failed to fully develop the record and suggests the ALJ should have arranged for consultative examinations. While the ALJ has a duty to

5

develop the record, that duty is implicated only if the records provided are inadequate. The duty arises if a crucial issue is undeveloped or underdeveloped, but it does not arise simply because doctors provide conflicting opinions. Samons v. Astrue, 497 F.3d 813, 819 (8th Cir. 2007). "The ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." Barrett v. Shalala, 39 F.3d 1019, 1023 (8th Cir. 1994). Plaintiff does not contend that the evidence was undeveloped or undeveloped. The Record was sufficient to allow for a determination, and that determination was that Plaintiff's condition is not disabling. Plaintiff's problem is that there is not medical evidence to support his claim, not that the medical evidence is insufficient to allow for a determination. The ALJ was not required to obtain further testing.

Finally, Plaintiff argues the hypothetical question posed to the VE was inadequate. This argument incorporates an attack on the ALJ's factual findings, because the hypothetical question needed only to include the impairments the ALJ found to exist. E.g., Vandenboom v. Barnhart, 421 F.3d 745, 750 (8th Cir. 2005).

With respect to his foot, the critical issue is not whether Plaintiff experiences pain but rather the degree of pain that he experiences. House v. Shalala, 34 F.3d 691, 694 (8th Cir.1994). The familiar standard for analyzing a claimant's subjective complaints of pain is set forth in Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984) (subsequent history omitted):

> While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced. The adjudicator may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them.
>
> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the

> testimony and complaints. The adjudicator must give full
> consideration to all of the evidence presented relating to
> subjective complaints, including the claimant's prior work
> record, and observations by third parties and treating and
> examining physicians relating to such matters as:
>
> > 1. The claimant's daily activities;
> > 2. the duration, frequency and intensity of the pain
> > 3. precipitating and aggravating factors;
> > 4. dosage, effectiveness and side effects of medication;
> > 5. functional restrictions.
>
> The adjudicator is not free to accept or reject the claimant's
> subjective complaints solely on the basis of personal
> observations. Subjective complaints may be discounted if
> there are inconsistencies in the evidence as a whole.

739 F.2d at 1322.

The Court accepts Plaintiff's argument that his subjective complaints of pain cannot be discounted or ignored simply because they are not fully corroborated by objective medical evidence. Nonetheless, the ALJ is entitled to consider the lack of objective medical evidence confirming Plaintiff suffers from a condition that could be expected to cause disabling pain. The ALJ was also entitled to consider Plaintiff's motivations to exaggerate, including his sporadic work history and child support obligations. Plaintiff was not taking strong pain medication, which is also inconsistent with subjective complaints of disabling pain. See Richmond v. Shalala, 23 F.3d 1441, 1443-44 (8th Cir. 1994). Plaintiff testified that he sought a change in prison jobs because of his foot, but the Record reflects that he changed jobs because he needed a less stressful environment. Finally, and perhaps most importantly, Plaintiff conceded that he could sit for an unlimited period of time. There is substantial support for the ALJ's conclusion that Plaintiff is limited, but not to the degree Plaintiff contends.

With respect to Plaintiff's mental condition, the ALJ found Plaintiff suffers from PTSD. The ALJ's findings (and the ALJ's hypothetical to the VE) incorporated limitations based on PTSD, including moderate limits on Plaintiff's ability to understand, remember and carry out detailed instructions, maintain attention and concentration for extended

7

periods, and interact appropriately with the public.  Plaintiff's issue is not with the finding that he is limited in these areas, but the extent of those limitations.  However, nothing in the Record suggests Plaintiff is limited to a degree greater than that found by the ALJ.  The March 2009 letter provides no diagnostic tests to support its statement that Plaintiff is markedly limited in various areas, and the letter's conclusion that Plaintiff cannot work not entitled to deference because it is not a medical opinion.  In fact, the letter is inconsistent with the other records from TMC, which reflect Plaintiff is limited – just not to the extent he claims.

### III.  CONCLUSION

For these reasons, the Commissioner's final decision denying an award of benefits is affirmed.

IT IS SO ORDERED.


DATE: October 6, 2010

/s/ Ortrie D. Smith  
ORTRIE D. SMITH, JUDGE  
UNITED STATES DISTRICT COURT